# KOOB & MAGOOLAGHAN
*Attorneys at Law*

221 DEVOE AVENUE
TELEPHONE: (914) 964-8888

YONKERS, NEW YORK 10705
FACSIMILE: (914) 964-8801

ELIZABETH L. KOOB
JOAN MAGOOLAGHAN

ALEXANDER A. REINERT
*Of Counsel*

**By ECF**

June 16, 2009

The Honorable Steven M. Gold
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   Elmaghraby, et al. v. Ashcroft, et al., 04 Civ. 1809 (JG) (SMG)
      Turkmen, et al. v. Ashcroft, et al., 02 Civ. 2307 (JG) (SMG)

Dear Chief Judge Gold:

This letter is submitted on behalf of plaintiff Javaid Iqbal in opposition to the United States' June 10, 2009, motion seeking a stay of nearly all discovery in the above-referenced actions.[1] The fundamental problem with the Government's motion is that it suggests that the mere addition to a complaint of defendants with unresolved qualified immunity defenses somehow results in plaintiffs being entitled to less discovery than they otherwise would be entitled to if those defendants were not included. The Government takes this position despite the fact that the discovery sought in these cases clearly relates to defendants on whose behalf no qualified immunity defense has been asserted. The United States rests its motion almost entirely on language from the Supreme Court's decision in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), an opinion that does not, and could not, have the broad reach accorded to it by the Government. For these reasons, plaintiff respectfully request that defendant's motion for stay be denied.

We note at the outset that, to the extent the United States seeks only to vindicate the "litigative position" of certain individual *Bivens* defendants, it has no standing to seek a stay of discovery. The United States can no more assert by proxy the interests of individual defendants in avoiding the erosion of their litigative position than they can assert the interests of individual defendants in

---

[1] We fully join the opposition filed by the plaintiffs in Turkmen and write separately only to highlight certain deficiencies in the Government's argument and address those instances where the claims in Elmaghraby and Turkmen differ.

their qualified immunity defense. Cf. Owen v. City of Independence, Mo., 445 U.S. 622, 638 (1980) (rejecting qualified immunity for municipalities). For this reason alone defendant's motion should be denied.[2]

    I.    The Supreme Court's Decision in Ashcroft v. Iqbal Has No Bearing on the Scope of Discovery Against the United States or Against the Remaining Individual Defendants

The Supreme Court granted certiorari in Iqbal to address two questions regarding the claims against defendants Ashcroft and Mueller, neither of which implicates the scope of discovery against other defendants. See Petition for Certiorari, No. 07-1015, at (I). At most, then, the Supreme Court's opinion only could speak to the breadth of discovery available against those two defendants and no one else.

Nor did the Supreme Court reach the issues raised by the Government's request for a stay. The Court began its opinion in Iqbal by emphasizing what the United States seeks to obscure here: "Respondent's account of his prison ordeal could, if proved, demonstrate unconstitutional misconduct by some governmental actors. But the allegations and pleadings with respect to these actors are not before us here." See Ashroft v. Iqbal, 129 S. Ct. 1937, 1942 (2009); see also id. at 1944 ("The allegations against petitioners are the only ones relevant here."). According to the United States, however, so long as a lawsuit is contemplated against defendants Ashcroft and Mueller, plaintiff will have no opportunity through discovery to pursue claims that the Supreme Court itself acknowledged have validity.

The United States admits as much, arguing instead that its broad reading of the reach of Iqbal can be inferred from reading out of context one paragraph of dicta found in the Court's decision. See Def. United States' Letter Motion for Stay at 6. That paragraph was part of the Court's response to what it termed Mr. Iqbal's argument that "our construction of Rule 8 should be tempered where, as here, the Court of Appeals has 'instructed the district court to cabin discovery in such a way as to preserve' petitioners' defense of qualified immunity 'as much as possible in anticipation of a summary judgment motion.'" 129 S. Ct. at 1953 (quoting Brief for Respondent at 27.).[3] Both the beginning and the end of that section of the opinion make clear that the Court was addressing the scope of discovery against defendants Ashcroft and Mueller personally, and to the extent that the Court held that discovery against other defendants raised a problem, it was in the context of the Court finding that no valid Bivens claim was alleged against Ashcroft and Mueller. The Supreme Court was simply stating the obvious – a defendant is entitled to be dismissed from a complaint that is deficient under Rule 8, whether or not discovery is only contemplated against other defendants. 129 S. Ct. at 1953 (noting that "the question presented

---

[2] By letter dated June 15, 2009, defendants Rolince and Maxwell joined the United States' request, on the basis of their intention to file a Rule 12(c) motion before Judge Gleeson. Given that defendants Ashcroft and Mueller themselves contrasted the specificity of the facts alleged against Rolince and Maxwell with the supposed conclusory nature of the allegations made against the Iqbal petitioners, we doubt that Iqbal has much to offer anyone other than Ashcroft and Mueller. In any event, we will address the arguments raised by defendants Rolince and Maxwell by separate letter.

[3] Contrary to this characterization, Mr. Iqbal never argued that the Supreme Court's interpretation of Rule 8 should be adjusted based on the cabined discovery approved by the Second Circuit. Rather, Mr. Iqbal argued that to the extent the defendants relied on the policy justifications for qualified immunity to put forth a heightened pleading requirement, this argument was undermined by the limited discovery approved by the Second Circuit.

by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process").

The United States takes this common-sense notion and runs with it, arguing for a scheme in which no discovery at all may proceed until <u>all</u> claims against <u>all</u> defendants are found to survive a motion to dismiss for qualified immunity or for failure to state a claim. [4] Under the United States' logic, not even Phase I discovery would be appropriate in this case because it would impose a "litigative" burden on some defendant who may have an unresolved qualified immunity claim. Such an interpretation of the Supreme Court's opinion in <u>Iqbal</u> cannot withstand scrutiny. All the Court's opinion can be read to mean with respect to discovery is the sentence which follows the out-of-context language quoted by the United States: "We decline respondent's invitation to relax the pleading requirements on the ground that the Court of Appeals promises petitioners minimally intrusive discovery." <u>Id.</u> at 1953-54.

Indeed, if the United States' position were taken seriously, any time multiple defendants are involved in a case, no discovery could proceed if any of the defendants raised a qualified immunity defense. Even if certain individuals were not named as defendants, just the prospect of having to pay attention to discovery in the event that the discovery adversely affected their "litigative position" in a present or future case would mean that discovery could not proceed. This would effectively paralyze any litigation in which qualified immunity could ever be raised as an issue by individuals within or without the litigation.

The possible outcomes of the instant case illustrate the incoherence of the United States' position. As this case presently stands, the Second Circuit will have to first consider whether Mr. Iqbal will be permitted to return to the district court to amend his pleadings to make more specific allegations regarding Messrs. Ashcroft and Mueller. If the Second Circuit does not permit Mr. Iqbal to return to the district court, or if the district court rejects his proffered amendments to the complaint, Messrs. Ashcroft and Mueller will be dismissed from the case, pending any appeal by Mr. Iqbal. If, however, Mr. Iqbal is permitted to amend his complaint and successfully alleges a cause of action against these two defendants, they will be proper defendants. In either of those circumstances, Mr. Iqbal will be able to proceed with the discovery sought to be stayed by the United States. After all, here Mr. Iqbal does not seek any discovery against Messrs. Ashcroft and Mueller personally – surely they could not object to such discovery if they were not even joined as defendants. Therefore, however this case is currently resolved by the Second Circuit and the district court, the discovery sought to be stayed by the United States will be proper. The only result of staying discovery will be to delay it, and further erode the memories of witnesses.

The United States might respond that any successful amendment against Messrs. Ashcroft and Mueller will be met with a motion to dismiss by those defendants, which would result in the need to protect their "litigative" posture in this case and thus further argue for a stay. This response would only prove the illogic of the United States' position: if Messrs. Ashcroft and Mueller are

---

[4] Via letter filed moments ago, Messrs. Ashcroft and Mueller adopt the government's unwarranted interpretation of Iqbal and assert on one hand that no claims are presently pending against them in Iqbal (p. 5), and on the other hand that all discovery has to be stayed because of the potential that such claims will be supported through discovery. For the reasons set forth herein, that contention should be rejected.

dismissed from this case, the United States maintains that plaintiffs are entitled to more discovery than if they remain in the case, even though none of the discovery is sought against these defendants personally. To state this conclusion is to demonstrate its absurdity.

   II.   The Supreme Court's Decision In Iqbal Did Not Eliminate The Possibility Of Holding High-Level Defendants Accountable For Violations Of Their Superintendent Responsibilities

The United States, citing exclusively to the dissent in Iqbal, also claims that the Supreme Court's opinion eliminates supervisory liability entirely in Bivens cases. See Def. United States' Letter Motion for Stay at 10-11. This assertion again cannot be squared with Iqbal's language. All Iqbal says regarding the substantive standard for liability is that "supervisory liability" is a misnomer, because supervisors can be held liable under Bivens for their own actions, not solely for the conduct of their subordinates. This is consistent with the Second Circuit's case law, and is in fact consistent with the position that Mr. Iqbal has taken throughout this litigation.[5] Moreover, in the same paragraph that the Court disclaimed the language "supervisory liability," it clarified that Messrs. Ashcroft and Mueller may be held liable for "violations arising from [their] superintendent responsibilities." Iqbal, 129 S. Ct. at 1949. At most, the Court's opinion means that, where intent is an element of a cause of action, as in equal protection claims, a supervisor must be shown to have done more than acquiesced in a subordinate's misconduct; the supervisor must have intended the subordinate to violate a plaintiff's rights. Indeed, when the Court spoke of supervisory liability as a "misnomer," it was referring to a version of supervisory liability that was solely vicarious in nature – respondeat superior – and not to the liability for violations of defendants' superintendent responsibilities sought to be imposed here. Id. at 1949. This is far from eliminating supervisory liability in its entirety, a position never endorsed by the majority opinion in Iqbal.[6]

   III.   The Supreme Court's Decision in Iqbal Has No Bearing on the Ability of Mr. Iqbal to Adequately Plead a Cause of Action Against Ashcroft and Mueller Based on the Discovery Adduced to Date

Finally, the Government implies that the Court's decision in Iqbal should render Mr. Iqbal's intent to amend the complaint a dead letter because of an amicus brief filed by the Turkmen plaintiffs in Iqbal. See Def. United States' Letter Motion for Stay at 13. In that amicus brief, the Turkmen plaintiffs sought to bring to the Court's attention the discovery adduced to date that showed the involvement of Messrs. Ashcroft and Mueller in the conduct challenged in this case. The Government suggests that the Court's decision in Iqbal should be read as an implicit holding that the discovery referred to in the amicus brief is not sufficient on its own to justify an amendment to the pleadings by Mr. Iqbal. This is an inferential leap that reads Iqbal to reach even matters never even addressed by the Court.

---

[5] The Government has conceded that knowledge and acquiescence alone is enough to state a Bivens claim against supervisors. Although Mr. Iqbal properly relied on this concession in the Supreme Court, any claim for a violation of equal protection obviously must also include a showing of discriminatory intent.

[6] Indeed, had the majority intended to eliminate supervisory liability in its entirety, then it would have had no need to address the pleading issues presented in Iqbal.

Neither the majority nor the dissenters referred to the Turkmen brief in their respective opinions. All of the opinions made clear that they were judging the sufficiency of Iqbal's pleadings based on the allegations present in the complaint and not on some hypothetical allegations that Mr. Iqbal may later be able to make. Indeed, the Court's remand to the Second Circuit makes clear that it considers the ability of Mr. Iqbal to amend his complaint to be an open question. Nothing in Iqbal pretermits resolution of this question at this stage.

In short, the reasons offered by the United States for a stay of discovery have no limiting principle. If accepted, the Government's argument would permit any individual government official to bar discovery of certain materials solely because disclosure of such information would support the imposition of liability against that official. This is a recipe for obscuring relevant facts, not protecting from the burdens of discovery. For the foregoing reasons, we respectfully request that the Court deny the United States' motion for a stay of discovery.

Respectfully submitted,

*Alexander A. Reinert*

Alexander A. Reinert

cc:   All counsel and pro se defendants
      By email or mail