

**U.S. Department of Justice**

Civil Division

*Washington, D.C. 20530*

PJP:SEHandler
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

Telephone No.
(202) 616-4279

August 5, 2009

<u>Filed Electronically</u>

The Honorable Steven M. Gold
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11202

      Re:   *Turkmen, et al. v. Ashcroft, et al.*,
             Civil Action No. 02 CV 2307 (JG)(SMG)
             *Elmaghraby & Iqbal v. Ashcroft et al.*,
             <u>Civil Action No. 04 CV 1809 (JG)(SMG)</u>

Dear Chief Judge Gold:

      This letter serves as the United States' reply to the letters of both Javaid Iqbal and the *Turkmen* plaintiffs in opposition to the June 10, 2009 motion to stay discovery. The United States moved to stay all discovery in these cases with the exception of certain limited discovery remaining in Phase I that does not adversely affect the litigative positions of the individual defendants who are asserting qualified-immunity defenses. The motion derives from the unambiguous mandate issued by the Supreme Court in *Ashcroft, et al. v. Iqbal*, 129 S. Ct. 1937 (2009). Without rehashing arguments made in the original motion, the United States finds it necessary to respond to plaintiffs' untenable parsing of the *Iqbal* decision.[1]

---

[1] Although Plaintiff Iqbal argues that the United States alone lacks standing to "vindicate the 'litigative position' of certain individual *Bivens* defendants," *see* Iqbal Letter, June 16, 2009, at *1 (*Elmaghraby* Dkt. No. 583), all of the individual defendants who are asserting qualified-immunity defenses have joined the United States' motion to stay. *See* Ashcroft and Mueller Letter, June 19, 2009 (*Turkmen* Dkt. No. 672); Hasty Letter, June 19, 2009 (*Turkmen* Dkt. No. 674); Ziglar Letter, June 19, 2009 (*Turkmen* Dkt. No. 675); Hawk-Sawyer, Rardin, and Cooksey Letter, June 19, 2009 (*Elmaghraby* Dkt. No. 587); Rolince and Maxwell Letter, June 18, 2009 (*Elmaghraby* Dkt. No. 585). Separate and apart from the individual defendants' right to seek a

I. The Supreme Court's Limiting Instruction Regarding Discovery
   Addresses the Rights of the Individual Defendants Who are Asserting
   <u>Qualified-Immunity Defenses, Not the Type of Claims Being Asserted</u>

The *Turkmen* plaintiffs have stipulated to a stay of discovery relating to the equal-protection claims currently before the Second Circuit. *See Turkmen* Letter, June 16, 2009, at *1 (*Turkmen* Dkt. No. 673). Nonetheless, their attempt to distinguish between equal-protection *Bivens* claims and conditions-of-confinement *Bivens* claims—as it pertains to their right to obtain discovery prior to final adjudication of qualified-immunity motions—cannot be countenanced in light of the breadth of the Supreme Court's decision in *Iqbal*. The *Turkmen* plaintiffs suggest that because this Court has previously permitted them to seek discovery on the conditions claims "without excluding documents or witnesses merely because they might have some relevance to Defendants whose qualified-immunity defenses are still before the courts," and those claims were not directly before the Supreme Court, there is no reason to change the status quo. *See id.* at *2-3. Plaintiffs' reasoning runs contrary to the Supreme Court's directive in *Iqbal*.

The Supreme Court was clear in announcing that in order to maintain the rights of defendants with pending qualified-immunity defenses, courts should not permit discovery until final resolution of assertions of qualified-immunity defenses. *Iqbal*, 129 S. Ct. at 1953 ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'") (citation omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1981) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). The Supreme Court emphasized that such curtailment must include any discovery against "other defendants" that might have some relevance to claims being challenged by the individual

---

stay, the United States as "[a] party . . . from whom discovery is sought may move for a protective order . . . ." Fed.R.Civ.P. 26(c). *See generally Computer Assoc. Intern., Inc. v. Simple.com, Inc.*, 247 F.R.D. 63, 68 (E.D.N.Y. 2007) ("Under Rule 26, courts have discretion to impose a stay of discovery pending the determination of dispositive motions by the issuance of a protective order."). To the extent plaintiffs seek to obtain discovery directly from the United States, the Government brings this motion on its own behalf to avoid "annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. Proc. 26(c); *see* United States Letter, June 10, 2009, at *12 (*Turkmen* Dkt No. 670) ("Responding to [plaintiffs'] demands, particularly in light of the Supreme Court's ruling in *Iqbal*, would be unduly burdensome and costly."). Moreover, the *Bivens* defendants join the United States' motion not only to vindicate their own rights under the qualified-immunity doctrine, but also to support its position in general. *See Rivera v. Inc. Vill. of Farmingdale*, 2007 WL 3047089, at *1 (E.D.N.Y. Oct. 17, 2007) (considering "whether some or all of the defendants have joined in the request for a stay" when evaluating a motion) (citation omitted).

defendants under the qualified-immunity doctrine. Otherwise, the potentially-immune defendants may be required to participate in pretrial proceedings in order "to ensure the case does not develop in a misleading or slanted way . . . ." 129 S. Ct. at 1953. The Court did not restrict its discovery-limiting instruction to the type of claim being asserted. Rather, it focused on the rights of defendants asserting qualified immunity. In fact, the Supreme Court admonished the Second Circuit for permitting exactly what the plaintiffs seek—discovery that may adversely affect the rights of defendants whose qualified-immunity defenses are still pending.[2] *See, Iqbal*, 129 S. Ct. at 1953-55 ("We decline respondent's invitation to relax the pleading requirements on the ground that the Court of Appeals promises petitioners minimally intrusive discovery.").

Iqbal's overall criticism of the United States' motion — "the mere addition to a complaint of defendants with unresolved qualified immunity defenses somehow results in plaintiffs being entitled to less discovery than they otherwise would be entitled to if those defendants were not included," *Iqbal* Letter at *1— conflates two fundamentally distinct concepts, *i.e.*, the amount of discovery he is entitled to and when this discovery should be produced. A stay of discovery relates solely to the timing of any discovery to which the plaintiffs may be entitled. Under the Supreme Court's ruling, any discovery affecting unresolved immunity defenses must be postponed until those defenses have been resolved to ensure potentially-immune defendants are not dragged into the discovery process. Following final adjudication, relevant discovery pertaining to all remaining claims would commence.

For that reason, Iqbal's assertion that, irrespective of the resolution of his right to amend his complaint against defendants Ashcroft and Mueller, discovery should nonetheless proceed ignores the fact that should his amendment be denied, the scope of discovery would be limited. In other words, it is unlikely that he will be entitled to materials pertaining to the claims asserted against the dismissed defendants. Resolution of the qualified-immunity issues in this case will more narrowly define and circumscribe the areas in which discovery should proceed, rather than open the door for <u>more</u> discovery against the dismissed defendants as Plaintiff Iqbal repeatedly suggests.

Unlike the *Turkmen* plaintiffs, Plaintiff Iqbal does not address the issue of whether the

---

[2] In addition, discovery should be stayed regarding the conditions-of-confinement claims that are based upon violations of the First Amendment because the discovery sought would be unduly burdensome and costly. *See Turkmen* Letter at * 2. In *Iqbal*, the Supreme Court reiterated its historic reluctance to "extend *Bivens* liability 'to any new context or new category of defendants.'" *Iqbal*, 129 S. Ct. at 1948 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). While the Court did not specifically address the issue, the majority noted that the Court previously declined to deem *Bivens* actions colorable based on First Amendment violations, *see Bush v. Lucas*, 462 U.S. 367 (1983), while suggesting that such "reluctance might well have disposed of respondent's First Amendment claim of religious discrimination." *Id.* at 11. Given that one of the considerations in evaluating a motion to stay discovery is whether a "defendant has made a strong showing that the plaintiff's claim is unmeritorious," *Rivera v. Inc. Vill. of Farmingdale*, 2007 WL 3047089, at *1, discovery should be stayed until resolution of the qualified-immunity defenses to these conditions-of-confinement claims as well.

requested discovery will require some involvement of the defendants asserting qualified-immunity defenses. Rather, he contends that because discovery is not being requested from the individual defendants personally, there should be no stay of discovery in this case. However, this position was expressly rejected by the Supreme Court in *Iqbal* when it stated, "[e]ven if petitioners are not yet themselves subject to discovery orders, [ ] they would not be free from the burdens of discovery." *Id.* at 1953. It makes no difference that the same discovery may be related to other claims in the case, as long as that discovery will require high-level officials to affirmatively engage in the discovery process to "ensure that the case does not develop in a misleading or slanted way that causes prejudice to their position." *Id.* at 1953. Because Phase II discovery will require the participation of the individual defendants who are asserting qualified-immunity defenses, this discovery cannot proceed.

II.  The Supreme Court's Rejection of the "Careful-Case-Management" Discovery Approach was Essential to its Holding Regarding the Rule 8 Pleading Standard

Plaintiff Iqbal asserts that the Supreme Court's limiting instruction on discovery should be ignored because it is mere dicta. *See Iqbal* Letter at 2. Yet, Iqbal fails to appreciate the procedural posture which led to the Supreme Court's decision. The Second Circuit applied the liberal pleading requirement of Fed.R.Civ.P. 8 to deny the individual defendants' assertions of qualified-immunity specifically because the panel believed "discovery safeguards" could be implemented to protect "the substance of the qualified immunity defense." *Iqbal v. Hasty*, 490 F.3d 143,159 (2d Cir. 2007). In rejecting Iqbal's argument in favor of the careful-case-management approach, the Supreme Court pointed out that the discussion regarding the discovery issue "bear[s] on our disposition of his case." *Iqbal*, 129 S. Ct. at 1952. In explaining its reasoning, the Court's discussions of the appropriate pleading standard and the "conditions placed upon the discovery process" were both essential to the holding of the Court, as they delineated the parameters of the rights of defendants who have asserted qualified-immunity defenses. *See Iqbal*, 129 S. Ct. at 1953 ("Our rejection of the careful-case-management approach is especially important in suits where Government-official defendants are entitled to assert the defense of qualified immunity.").

Yet, the *Turkmen* plaintiffs argue that the Court's limiting instruction does not extend to "all discovery against those who do not assert the [qualified-immunity] defense" because the "question of what discovery should be allowed after remand was not before the Court; it was not in the question presented, and was neither briefed nor argued." *Turkmen* Letter at * 3-4. On the contrary, the issue whether "discovery for the petitioners can be deferred while pretrial proceedings continue for other parties" was, in fact, discussed and determined to be incompatible with the proper pleading standard under Rule 8. *See, Iqbal*, 129 S. Ct. at 1954.

It is precisely for that reason the United States cited the *Turkmen amicus* brief in its original motion. These particular plaintiffs sought to persuade the Supreme Court to allow further inquiry by presenting some of the materials already obtained through the discovery process. In particular, the *amici* asserted that they

> present to the Court material, obtained during discovery in their action and Iqbal's of parties other than the petitioners, which illustrates information that has already

appeared concerning petitioners' role in this nationwide pattern of conduct, as well as avenues for further discovery of that role. They submit that this material shows that an injustice would be done if Iqbal's claims were dismissed without an opportunity to take the limited discovery contemplated by the Second Circuit's decision.

See *Ashcroft, et al. v. Iqbal, et al.*, 128 S.Ct. 2931 at *iv (2008).

The Supreme Court explicitly rejected that type of post-complaint review. Instead, the Court made clear that any discovery conducted following the initial complaint should have no bearing on a court's threshold ruling on motions to dismiss based on qualified immunity. *Iqbal*, 129 S. Ct. at 1953 ("[T]he question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process."). Thus, the contention that the Iqbal decision "only could speak to the breadth of the discovery available against [Ashcroft and Mueller] and no one else," see Iqbal Letter at *2, ignores the Supreme Court's instruction.

III.   Discovery Can Proceed Against the United States and the Individual
       Defendants Who are Not Asserting Qualified-Immunity Defenses if it
       <u>Does Not Affect the Individual Defendants Who are Asserting these Defenses</u>

Plaintiffs argue that the United States' motion to stay discovery "knows no bounds." *Turkmen* Letter at *3. To the contrary, the United States acknowledged in its motion that particular discovery against the United States and certain individual defendants may continue. See United States' letter, dated June 10, 2009, at *11 (*Turkmen* Dkt. No. 670.) However, plaintiffs must demonstrate the relevance of their discovery requests and show that such discovery would not adversely affect the individual defendants who are asserting qualified-immunity defenses.

Instead of making the requisite showing with respect to discrete discovery demands, the *Turkmen* plaintiffs argue that their conditions-of-confinement discovery should not be stayed even if it relates to claims for which individual defendants have asserted qualified immunity. For example, they assert that the deposition of Catherine Sheehan should proceed because there is "relevant information" in the "original OIG report [which] contains a chapter on the conditions of confinement for 9/11 detainees at MDC." See *Turkmen* Letter at *2 (referencing Chapter 7 of the OIG Report). In an apparent attempt to avoid the Supreme Court's limiting instruction on discovery, plaintiffs promise they will refrain from questioning Ms. Sheehan regarding her interviews with defendants John Ashcroft, Robert Mueller, and Robert Ziglar. Yet, they fail to describe the nature of the "relevant information" and whether it concerns the other individual defendants. Their omission of the BOP *Bivens* defendants in the *Iqbal* case, who also have unresolved assertions of qualified-immunity defenses pending before the Second Circuit, is telling. In fact, Chapter 7 is replete with information the OIG investigators obtained from defendants Kathleen Hawk-Sawyer, David Rardin, Michael Cooksey, and Dennis Hasty, as well as other high-level Department officials, namely David Laufman, the Deputy Attorney General's Chief of Staff, and Christopher Wray, the Principal Associate Deputy Attorney General, that

specifically pertains to the detainees' conditions of confinement.[3] In any event, if plaintiffs are permitted to depose Ms. Sheehan now, they would most certainly seek to redepose her if the claims asserted against the individual defendants survive. Deposing Ms. Sheehan twice would be a waste of time, money, and resources.

The *Turkmen* plaintiffs also argue that depositions of other non-party witnesses, such as Alice Fisher, Christopher Wray, and the Rule 30(b)(6) witnesses should go forward because they have relevant information regarding their "conditions-of-confinement claims asserted against non-appealing *Bivens* defendants (like Warden Zenk, Captain Lopresti, and the United States itself)." *See Turkmen* Letter at *3. Again, this particular discovery was initiated for the purpose of ascertaining who was providing direction and guidance regarding the development of the policies pertaining to the handling of the detainees, including their conditions of confinement. *See* United States' Letter at *7-9. Because plaintiffs have already admitted that the primary reason for demanding this discovery is to establish their claims against the individual defendants who are asserting qualified-immunity defenses, particularly defendants Ashcroft and Mueller, their argument is without merit. *See id.*, Tab D, citing Plaintiffs' Letter, dated February 4, 2009, at 1 (Turkmen Dkt. 661.).

IV. <u>Plaintiffs' Motion to Compel the Production of Privileged Documents Should be Denied</u>

Plaintiffs have also moved to compel the disclosure of the documents from high-level Department of Justice offices and officials, which were listed by the United States in twelve privilege logs.[4] *See Turkmen* Letter at *4-5. Because the disclosure of the documents in question

---

[3]*The September 11 Detainees: A Review of the Treatment of Aliens Held on Immigration Charges in Connection with the investigation of the September 11 Attacks*, April 2003, at 112-117, 126, 128, *available at* http://www.usdoj.gov/oig/special/0306/full.pdf.

[4]Plaintiffs also complain that the United States ignored the governing law on deliberative process, as set forth in Magistrate Judge Pollak's August 2, 2004 Order. *See* Turkmen Dkt. No. 78. In particular, they assert that these documents are unrelated to the formulation of policy, are not deliberative, and lacked a detailed explanation of the basis for the claim of privilege. In producing the privilege logs, the United States was, in essence, providing a "Vaughn Index," *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), in order to provide as much useful identifying information as possible without disclosing the confidential aspects of the communications. Such an index should contain the title or category of each document, the date, author, and recipient, a description of the document, and the exemption claimed to support nondisclosure.

The purpose of an index is to provide sufficient information in a way that would avoid unproductive discovery motions practice. Here, the sender and recipients are not only named, but the titles also establish certain elements of the privilege, such as their relationship to each other or their employing agency. For example, the privilege log for Laura Baxter identifies her as a Senior Counselor, Office of the Deputy Attorney General, and each of the recipients were also identified. The descriptions are sufficiently detailed to establish that they are privileged, many are described as drafts, notes, talking points, responses, and comments pertaining to the Department's policies regarding the handling of the PENTTBOM investigation and the

would necessarily affect the litigative positions of the appealing defendants, particularly defendants Ashcroft and Mueller, thus drawing them into the discovery process, plaintiffs' motion should be denied.

These documents were obtained from the offices of the Attorney General, Deputy Attorney General, Legal Policy, and from the offices of other high-level Department officials. In general, these documents address many topics pertaining to the Department's positions on various matters pertaining to the PENTTBOM investigation and the handling of the detainees—documents that were passed to and from high-level officials. It is obvious that the primary reason for obtaining these documents would be to establish that the individual defendants, particularly defendants Ashcroft and Mueller, were providing direction and/or guidance regarding the handling of the detainees. Because it is likely, and plaintiffs have not articulated otherwise, that such discovery would pull the individual defendants who are asserting these defenses into the discovery process and potentially adversely affect their litigative positions, the motion to compel should be denied.

For the foregoing reasons, the United States' motion to stay should be granted, and plaintiffs' motion to compel should be denied.

Respectfully yours,

*[signature]*

Stephen E. Handler
Senior Trial Counsel, Torts Branch
Civil Division

---

detainees. As recognized by Judge Pollak, "the deliberative process privilege protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency'" and "the privilege should be invoked only in the context of 'communications designed to contribute, directly, to the formulation of important public policy.'" *See* Order, August 2, 2004, at 4 (citations omitted).